758 So.2d 231 (2000)
STATE of Louisiana
v.
Robert CHAMBERS.
No. CR99-678.
Court of Appeal of Louisiana, Third Circuit.
January 19, 2000.
*232 Mr. Rob McCorquodale, Assistant District Attorney, District Attorney's Office, Lake Charles, Louisiana, Counsel for State-Appellee.
Mr. Ron Ware, Public Defender's Office, Lake Charles, LA, Counsel for Defendant-Appellant.
Court composed of Judge JOHN D. SAUNDERS, Judge BILLIE COLOMBARO WOODARD, and Judge OSWALD A. DECUIR.
DECUIR, Judge.
This is an appeal of the conviction and sentence of Robert Chambers for possession of marijuana with intent to distribute. The State indicted the Defendant on one *233 count of possession of marijuana with intent to distribute and a second count of possession of cocaine. At the conclusion of the jury trial, the jury acquitted the Defendant of possession of cocaine, but found the Defendant guilty as charged on the marijuana count. The trial judge sentenced the Defendant to twelve (12) years at hard labor.
On June 18, 1997, Detective Todd Chaddick obtained information from a confidential informant that someone was driving from Houston to an address on Twelfth Street in Lake Charles with marijuana. The informant said the suspect was a white male and he would be driving a gray Ford LTD. Officer Reginald Jenkins was the patrolman assigned to assist the narcotics detectives, and he stayed at the intersection of Twelfth Street and Enterprise Boulevard looking for a white male driving a gray car. He eventually saw a gray Ford being driven by a white male. Officer Jenkins followed the car and testified that the suspect began moving things around in his car and looking in his rearview mirror. While doing this, the suspect crossed the center line several times. Officer Jenkins was not sure if this was the vehicle the officers had told him about. He called headquarters with the license plate number to find out who was the owner.
Before Officer Jenkins heard back from headquarters, he pulled the vehicle over because it had crossed the center line several times. Upon being stopped, the suspect exited his vehicle and immediately ran to the police unit with his license out. As Officer Jenkins walked toward the Defendant's car, he smelled marijuana. The Defendant was unable to produce registration papers or insurance for the vehicle. The Defendant then consented to a search of his vehicle, and in the tire well in the trunk, the officer found numerous bundles of a substance that was securely wrapped, taped, numbered and smelled like marijuana.

ASSIGNMENT OF ERROR NO. 1:
By his first assignment of error, the Defendant contends the trial court erred when it denied his motion to suppress. The Defendant filed a pretrial writ application attacking the denial of his motion to suppress, and this court upheld the ruling of the trial court in State v. Chambers, an unpublished writ opinion bearing docket number 98-725 (La.App. 3 Cir. 8/12/98), writ denied, 98-2411 (La.11/20/98); 728 So.2d 881.
A defendant may seek review of a pretrial ruling by the trial court even after the denial of a pretrial supervisory writ application seeking review of the same issue:
The prior denial of supervisory writs does not bar reconsideration of an issue on appeal, nor does it prevent the appellate panel from reaching a different conclusion. State v. Fontenot, 550 So.2d 179 (La.1989); State v. Decuir, 599 So.2d 358 (La.App. 3 Cir.1992), writ denied, 605 So.2d 1095 (La.1992). When a defendant does not present any additional evidence on this issue after the pretrial ruling, the issue can be rejected on appeal. See, e.g., State v. Regan, 601 So.2d 5 (La.App. 3 Cir.1992), writ denied, 610 So.2d 815 (La.1993); State v. Wright, 564 So.2d 1269 (La.App. 4 Cir. 1989). Judicial efficiency demands that this court accord great deference to its pre-trial decision unless it is apparent that the determination was patently erroneous and produced unjust results. State v. Decuir, supra, at 360.
State v. Hebert, 97-1742 (La.App. 3 Cir. 6/3/98); 716 So.2d 63, 67, writ denied, 98-1813 (La.11/13/98); 730 So.2d 455, citing State v. Magee, 93-643, p. 2 (La.App. 3 Cir. 10/5/94); 643 So.2d 497, 499.
In the present case, the Defendant presented no additional evidence concerning the traffic stop, consent to search, and arrest. The argument presented in this appeal is nearly identical to the argument presented in the pretrial writ application. *234 There has been no change in the law concerning traffic stops and consent to search that would alter the outcome of the previous opinion. Thus, we reject this assignment of error, finding no error in the rulings of the trial court or this court on writ application.

ASSIGNMENT OF ERROR NO. 2:
The Defendant next contends that the trial judge erred when he denied the Defendant's challenge for cause of prospective juror Joseph Kennison.
A criminal defendant has the fundamental right to have a jury determine whether he may be guilty or innocent and whether the state proved all elements of the crime beyond a reasonable doubt. La. Const. Art. I, § 17; State v. Lacoste, 256 La. 697, 237 So.2d 871 (1970). Nevertheless, this fundamental right would become meaningless if not guided by the principle that the jury should be impartial in order to ensure that the criminal defendant receive a fair trial. This principle does not mean that a criminal defendant has the right to be tried by a particular type of jury or juror, but it simply means that it is essential that the jury be impartial and competent. State v. McLean, 211 La. 413, 30 So.2d 187 (1947). To make sure that the jury is competent and impartial, La. Const. Art. I, § 17 provides safeguards, such as the defendant's "right to full voir dire examination of prospective jurors and to challenge jurors peremptorily."
The purpose of voir dire is to determine whether or not prospective jurors are fit by testing their competency and impartiality. It is designed to uncover information regarding the prospective jurors, which may be used as a basis for challenges for cause or exercise of peremptory challenges. State v. Berry, 95-1610 (La.App. 1 Cir. 11/8/96); 684 So.2d 439, writ denied, 97-0278 (La.10/10/97); 703 So.2d 603. When a defendant exposes the partiality of a juror, the juror may not be automatically excluded for cause. The state or the court may rehabilitate the juror by asking questions and obtaining answers which demonstrate the juror's ability to decide the case impartially, pursuant to law and evidence. State v. Allen, 633 So.2d 325 (La.App. 1 Cir.1993). Ultimately, the trial court has the power to determine whether or not a juror may be excused for cause. State v. Turner, 96-845 (La.App. 3 Cir. 3/5/97); 692 So.2d 612, writ denied, 97-2761 (La.2/20/98); 709 So.2d 773.
To succeed on appeal with a claim that the trial court erroneously denied the challenge of a prospective juror for cause, a defendant must establish the existence of three factors: a timely objection, use of all peremptory challenges, and an abuse of discretion. Once a defendant establishes these three factors, prejudice is presumed and it need not be shown by the defendant. State v. Cross, 93-1189 (La.6/30/95); 658 So.2d 683.
Counsel for the Defendant objected when the trial judge denied his challenge for cause of Joseph Kennison; he thereafter exhausted all twelve of the Defendant's peremptory challenges. Counsel further requested that he be given one additional peremptory challenge because the trial court refused to excuse Kennison, but this request was denied. The remaining question is whether the trial court abused its discretion when it denied the Defendant's challenge for cause.
On voir dire, Kennison informed the court that his sister was a drug addict who died of a drug overdose seven years earlier. He further added that she died one week before she was to be a witness in a drug case. When asked if his experience with his sister would have any influence on him, Kennison said, "I'm afraid it would." He said he seriously doubted he could put it out of his mind even if told by the court it was his duty to do so. However, Kennison later said he would apply the law as instructed by the trial judge and could be fair to the Defendant. He also said that his feelings would not cause him to put an *235 innocent man in jail. When counsel for the Defendant asked Kennison if, based upon the tragic events involving his sister, he felt he was not suited to sit as a juror on this drug case rather than a burglary case, Kennison replied, "I think it quite possibly could be."
The pertinent jurisprudence focuses on whether the prospective juror states that he or she can put aside the experiences of relatives and be fair and impartial to the State and defendant. For example, in State v. Tassin, 536 So.2d 402 (La.1988), certiorari denied, 493 U.S. 874, 110 S.Ct. 205, 107 L.Ed.2d 159 (1989), rehearing denied, 495 U.S. 924, 110 S.Ct. 1961, 109 L.Ed.2d 322 (1990), the trial court correctly excused a prospective juror whose brother had been sentenced to three years probation after being convicted of a felony for shooting a man he found in bed with his wife, and who maintained she would be biased in favor of the defendant. On the other hand, many cases have upheld the denial of challenges for cause of prospective jurors whose relatives have been crime victims when the juror states that he or she would be fair and impartial and not prejudiced against the defendant. State v. Thom, 615 So.2d 355, 360 (La.App. 5 Cir. 1993) (although juror stated that her sister's rape would cause her to "look at the facts more closely," she stated she could be impartial and fair, and the court's review of voir dire reveals that she was able and willing to be an impartial juror); State v. Seals, 95-0305 (La.11/25/96); 684 So.2d 368, rehearing denied, certiorari denied, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997) (refusal to grant challenge for cause of juror whose grandfather was murdered during armed robbery of cab was not abuse of discretion in capital murder prosecution for murder of another cab driver during course of armed robbery where prospective juror indicated that he harbored no bias against defense based on murder of his grandfather when prospective juror was a small child).
The rehabilitation of Kennison was sufficient to overcome the initial doubt cast upon his ability to be fair and impartial. Kennison said he could apply the law as given by the trial judge and could be fair to the Defendant. He did not in any way admit partiality. The trial judge viewed Kennison while he was responding to the questions posed in voir dire. He concluded that Kennison was competent and impartial and thus qualified to be a juror. We find, therefore, that the trial judge properly exercised his discretion in denying defense counsel's challenge for cause.

ASSIGNMENT OF ERROR NO. 3:
By this assignment of error the Defendant argues that the trial court erred in allowing the State to introduce evidence that the Defendant had in his possession at the time of arrest a driver's license from British Honduras bearing the Defendant's photo but listing the name "John Robert Majors," an alias of the Defendant.
At trial, Detective Chaddick testified that the Defendant had four photo identifications. The Defendant anticipated that the State would attempt to introduce a false passport and a false driver's license, both from British Honduras, and counsel requested a bench conference. The State argued that the relevancy of identification was to establish that the Defendant owned the car containing the marijuana and that he had control over it. The Defendant had argued in opening statements that there was no evidence linking him to the marijuana found hidden in the trunk and the Defendant implied that the confidential informant had planted the marijuana.
The trial judge ruled that the State could ask the officer if he found any photo identification of the Defendant inside the car since it was probative of identification of who had control of the car. However, the officer could not testify that the identification contained an alias and came from a country that no longer existed. The trial judge further instructed the prosecutor not to exhibit the contents of the photo *236 identification. When the jury returned, the prosecutor asked the officer how many photo identifications of the Defendant were found in the car, and Detective Chaddick said, "four." The prosecutor asked if the picture on one identification was of the Defendant, and the officer said, "yes." Then the prosecutor asked what was the name on the identification and he answered, "John Robert Majors." Counsel for the Defendant immediately moved for a mistrial, which the trial judge denied.
Later, when Detective Chaddick said he "ran the names" on the photo identifications, counsel for the Defendant again moved for mistrial, and the trial judge denied it on the ground that there was very little prejudice up to that point.
On appeal, the Defendant argues that the cumulative effect of this testimony and the testimony of the two expert witnesses concerning drug traffickers carrying more than one photo identification with different names on them, deprived the Defendant of a fair trial and, thus, entitled the Defendant to a mistrial pursuant to La.Code Crim.P. Art. 775. Article 775 provides in part:
Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial,....
A mistrial is a drastic remedy and a trial judge has broad discretion in determining whether conduct is so prejudicial so as to deprive an accused of a fair trial. State v. Crawford, 95-1352 (La.App. 3 Cir. 4/3/96); 672 So.2d 197, 200, writ denied, 96-1126 (La.10/4/96); 679 So.2d 1379. The determination of whether prejudice has resulted is within the sound discretion of the trial judge whose ruling should not be disturbed absent abuse of discretion. Id. Arguably, the reference to the Defendant having false photo identification under an alias may be a reference to another crime, wrong or bad act, but in order for such a reference to mandate a mistrial, there must be a distinct or recognizable reference to another crime alleged to have been committed by the defendant. In State v. Williams, 96-652 (La.App. 3 Cir. 2/5/97); 688 So.2d 1277, the mere reference to a beeper did not constitute a distinct reference to other criminal activity justifying declaration of a mistrial. Id., 688 So.2d at 1281.
In the instant case, the trial judge determined that the probative value of evidence that four items of photo identification with the Defendant's picture were found inside the car containing the marijuana outweighed the prejudicial impact of testimony that one of the photo identifications used a false name or alias. Pursuant to La.Code Evid. Art. 403, this is a key test of the admissibility of relevant evidence. The trial judge admitted the relevant evidence, but also attempted to limit the amount of prejudicial information the State elicited from the officer. The trial judge found very little prejudice to the Defendant when evidence of the false name was revealed to the jury.
We find the trial court's evidentiary ruling to be proper. The record as a whole does not disclose that this evidence prejudiced the Defendant, and therefore, we conclude the trial judge's denial of a mistrial was not an abuse of discretion.

ASSIGNMENT OF ERROR NO. 4:
By his final assignment of error, the Defendant argues that he was prevented from establishing his defense that the confidential informant (C.I.) planted the marijuana on him because the trial court sustained a hearsay objection by the State.
The C.I. was dead by the time of trial and thus unavailable to testify. There were allegations about what the C.I. told Detective Chaddick, but the content of their conversation was not admitted into evidence. The detective testified that the C.I. committed suicide several weeks after the Defendant's arrest, that the C.I. had an extensive history of arrests for drug *237 violations, and that the C.I. had agreed to help the State in return for consideration on his own pending marijuana charges.
The State objected to the defense's questions about what the C.I. had said to the detective on the grounds of hearsay; the State argued that the detective did not have personal knowledge of whether the Defendant had been to the C.I.'s house earlier on the day of the arrest. This was the key fact that the Defendant intended to rely upon to prove his defense. The trial judge sustained the State's hearsay objection. Since the detective was the only person available to testify about the conversation, the Defendant was attempting to prove through hearsay evidence that the C.I. had an opportunity to plant the marijuana in the Defendant's car when the Defendant had been at the C.I.'s house earlier on the day of the arrest. Thus, the trial court did not err in sustaining the State's objection.
Finding no errors patent on the face of the record, and further finding no merit to the Defendant's assignments of error, we affirm the Defendant's conviction and sentence.
AFFIRMED.
WOODARD, J., DISSENTS AND ASSIGNS WRITTEN REASONS.
WOODARD, J., dissenting.
Respectfully, I dissent from the majority opinion, affirming the trial court's decision, as I find that it improperly denied Mr. Chambers' challenge for cause of Mr. Joseph Kennison as a prospective juror. Accordingly, I would reverse Mr. Chambers' conviction and remand the case to the trial court for a new trial.
In the instant case, Mr. Kennison clearly and candidly stated that he did not believe that he could be impartial in this case. On voir dire, he explained that his sister died of a drug overdose seven years ago, a week prior to her having to testify as a witness in a drug related case with similar facts to those sub judice. His declarations to the court on this issue are enlightening. Namely, in an exchange with the trial court, he revealed the following:
THE COURT: Do you feel that that [sic] experience would have any influence on you in this particular case?
Mr. Kennison: I'm afraid it would, Your Honor.
THE COURT: All right. Do you feel that it's to the extent you couldn't put that out of your mind if I told you that was your duty to do so?
Mr. Kennison: I seriously doubt it your honor.

(Emphasis added.) Nevertheless, in the trial court's continued attempt to rehabilitate Mr. Kennison, Mr. Kennison finally capitulated; however, recanting later, obviously in keeping with his true feelings that he could not be fair to this defendant.
THE COURT: At the conclusion of the evidence I will instruct you as to the law applicable to this case. You must apply the law as I instruct you to the facts as you find them. Will you follow the law as I give it to you?
Mr. Kennison: Yes, sir, I will.
THE COURT: The defendant is presumed innocent until proven guilty. He cannot be convicted unless the States [sic] proves each element of the offense charged against him beyond a reasonable doubt. Can you accept this as the law?
Mr. Kennison: Yes, Your Honor.
Yet, just seconds later, Mr. Kennison returns to what he maintained from the beginning that he could not be fair in this case:
THE COURT: Is there any personal, business family or health reasons you could not serve as an impartial juror? (No hands raised) Is there any reasons whatsoever why you feel you could not give both the defendant and the State a fair trial in this particular case? Mr. Kennison?
Mr. Kennison: Yes, sir.

*238 THE COURT: All right. This is again your feelings-
Mr. Kennison: Yes, sir.

THE COURT: at this particular time?
Mr. Kennison: Yes, sir.
(Emphasis added.)
Then, Mr. Kennison expressed his feelings to the state as follows:
Q Okay. Now, I understand that you have strong feelings about that, but those strong feelings wouldn't cause you to put an innocent man in jail, would they?
A No. sir.
Q Okay. You can be fair to Mr. Chambers in regard to his guilt or innocence, can't you?
A I think so, yes, sir.
Ultimately, in a final line of questions which defense counsel asked, Mr. Kennison stated:
Q Okay. And Mr. Kennison, concerning the tragic event involving your sister, you've heard us say yesterday and again this morning that some people are just not suited for some cases to sit as juror.
A Yes, sir.
Q Do you feel that that's [sic] the case with you here today?
A I think it quite possibly could be.
Q Yes, sir. If this was a burglary case it may be different. Would you agree with that?
A Yes, sir.
Q You prefer not to be here?
A Do I prefer not to be here?
Q Because of the kind of case it is?
A Not necessarily.
Q Okay, do you think you may carry some of that baggage into your deliberations?
A I don't see how I could do without it.

When it denied Mr. Kennison's challenge for cause, the trial court stated that "[i]t [was] satisfied after hearing the questioning of Mr. Kennison that he would be qualified to be a juror." I disagree. Clearly, in the light of his entire voir dire, and more specifically, his final response, which was to defense counsel, Mr. Kennison's capitulation was brief and not a reflection of what he truly felt. And what he truly believes will directly affect how he sees this case and, ultimately, deals with the Defendant, which means, according to his own expression, that he could not be fair. Accordingly, the trial court should have granted the challenge for cause, since this is the very situation such a challenge is designed to remedy. Additionally, defense counsel showed that he had exhausted all of his peremptory challenges. Thus, I find that the trial court abused its discretion when it denied Mr. Chambers' challenge of Mr. Kennison for cause.
In State v. Cross,[1] the Louisiana Supreme Court stated that a trial court's erroneous denial of a challenge for cause, which deprives the defendant of his peremptory challenges, "constitutes a substantial violation of [the defendant's] constitutional and statutory rights, requiring reversal of the conviction and sentence." Consequently, I would reverse Mr. Chambers' conviction and sentence and remand this case to the trial court for a new trial.
NOTES
[1] 658 So.2d 683, 686 (La.1995).