780 So.2d 1088 (2001)
STATE of Louisiana
v.
Hansel M. CHAIRS, a/k/a Anthony White, a/k/a Larry Johnson.
No. 99-KA-2908.
Court of Appeal of Louisiana, Fourth Circuit.
February 7, 2001.
*1091 Harry F. Connick, District Attorney of Orleans Parish, Nicole Brasseaux Barron, Assistant District Attorney, New Orleans, LA, Counsel for Plaintiff/Appellee.
Gwendolyn K. Brown, Louisiana Appellate Project, Baton Rouge, LA, Counsel for Defendant/Appellant.
Court composed of Judge PLOTKIN, Judge WALTZER, Judge TOBIAS.
PLOTKIN, Judge.
Hansel Chairs was convicted of two counts of simple burglary of an inhabited dwelling, and sentenced to life imprisonment as a multiple offender. He appeals his convictions and sentence, asserting five assignments of error. We affirm the convictions and amend the sentence as to Count 2, for the reasons below.

STATEMENT OF THE CASE
By bill of information dated April 1, 1998, defendant was charged with three counts of simple burglary of an inhabited dwelling, to which he pleaded not guilty. On October 28, 1998, a twelve-member jury found defendant guilty as charged on Counts 1 and 2. The State entered a nolle prosequi as to Count 3. On February 8, 1999, in response to a multiple bill, the trial court sentenced defendant to twelve years at hard labor without benefit of parole, probation, or suspension of sentence on both counts, with the sentences to run concurrently. On March 4, 1999, defendant was found to be a third offender. The trial court vacated the sentence on Count 1 and resentenced defendant to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The trial court denied defendant's motion for reconsideration of sentence.

STATEMENT OF THE FACTS
Officer Jimmy Slack testified that on January 22, 1998, at around 11:50 a.m., he and Officer Greg Patrolia went to 9035 Pritchard Place to assist two other officers in the investigation of a burglary. Officer Slack further testified that he and Officer Patrolia went to the rear of the residence and found that the perpetrator, whom Officer Slack identified as defendant, had entered the house through a back window. Officer Slack stated that after additional officers arrived and secured the perimeter, he and Patrolia decided to enter the house. Officer Slack said that he entered halfway through the window and saw defendant in the kitchen making a sandwich. Defendant saw Officer Slack, then ran to the front of the house where he was subsequently arrested by other officers.
Officer Kenny Temple testified that on January 22, 1998, he and his partner responded to the call of a burglary at 9035 Pritchard Place. Officer Temple stated that he, his partner, and another officer secured the front of the residence while other officers went to the rear. He and two other officers at the front of the house arrested defendant when he came through the front door. Officer Temple stated that a coin purse and jewelry were found on defendant's person.
Carmencia Edwards testified that she lived at 9035 Pritchard Place and that on January 22, 1998, she received a call from the police while she was away from home. She returned to her home soon thereafter and saw defendant in the back of a police car. Edwards identified a gold chain around defendant's neck as belonging to her. She also identified the coin purse and jewelry that had been previously found on defendant as hers. Edwards testified that the jewelry had been in a jewelry box in her bedroom, and she identified photographs showing that the drawers to the jewelry box and a dressing table had been pulled out. She further noted that food had been taken out of her refrigerator and left on the table. She testified that she had never seen defendant before and that he did not have permission to be in her house.
*1092 Janice Vallery testified that she lived at 3118 Mistletoe Street and that on the morning of January 12, 1998, after returning home from taking her granddaughter to school, she opened the door and saw defendant on the stairs. Vallery stated that she did not know defendant. When she saw defendant in her house, she first thought that defendant was a roof repairman that had been let in by her son. Vallery soon realized that if he was the repairman, her son would have been in the house with him, and her son was not there. She testified that she walked defendant outside, and after she pointed to holes in the roof that needed to be repaired, he ran away. Vallery further testified that defendant entered her house by removing a windowpane and shimmying over a bar in her den. She stated that the drawers in her bathroom were in disarray, but the only thing missing from her home was a flashlight and some candy. Vallery later identified defendant in a photographic lineup.

DISCUSSION

ERRORS PATENT
A review of the record reveals an error patent with regard to defendant's sentence on Count 2 which was imposed without benefit of parole, probation, or suspension of sentence for the entire sentence. Under La. R.S. 14:62.2, only the first year of the sentence is to be served without benefit of parole, probation, or suspension of sentence. Therefore, the sentence must be amended to provide that only the first year of the sentence is to be without benefit of parole, probation, or suspension of sentence. There are no other errors patent.

ASSIGNMENT OF ERROR NO. 1
In his first assignment of error, defendant argues that the trial court erred in denying his motion for a mistrial when the trial judge referred to defendant's two aliases in the presence of the jury. Defendant argues that the judge's reference to the aliases set forth in the bill of information was prejudicial because the aliases had no probative value and alluded to the fact that defendant had a prior criminal record.
Following the first round of voir dire, defendant moved for a mistrial based on the trial judge's reading the bill of information containing defendant's name and two aliases. The trial judge stated that his instructions to the jurors were that the bill of information is not evidence and means nothing. Defendant then argued that he was not informed that the State amended the bill of information to include the two aliases. The trial judge denied the motion for mistrial.
Defendant reurged the motion for mistrial after the completion of voir dire. The trial judge stated that the law allows aliases to be listed; however, she told the minute clerk not to read the aliases. The trial judge further stated "[i]f you wanted a voir dire on the aliases and their perception of what an alias means you certainly had the opportunity to. You chose not to."
La.C.Cr.P. art. 466 provides:
In an indictment it is sufficient for the purpose of identifying the defendant to state his true name, or to state the name, appellation, or nickname by which he is known, or if no better way of identifying him is practicable, to state a fictitious name, or to describe him as a person whose name is unknown, or in any other manner. In stating the true name or the name by which the defendant is known or a fictitious name, it is sufficient to state a surname, a surname and one or more given names, or a surname and one or more abbreviations or initials of a given name or names.
If the true name of a defendant identified in the indictment otherwise than by his true name is disclosed by the evidence or is otherwise discovered, the court shall cause the indictment to be amended to show his true name, and the proceedings shall continue against the defendant in his true name.
In no case is it necessary to aver or prove that the true name of the defendant *1093 is unknown to the grand jury, complainant, or prosecuting officer.
"La.C.Cr.P, article 466 does not prohibit the state from using both the real name of a defendant and his alias in the bill of information." State v. Allen, 94-1895, p. 10 (La.App. 4 Cir. 9/15/95), 661 So.2d 1078, writs denied, 95-2475 (La.2/2/96), 666 So.2d 1087, 95-2557 (La.2/2/96), 666 So.2d 1087; State v. Bell, 581 So.2d 384, 387 (La.App. 4 Cir.1991).
La.C.Cr.P. art. 770 provides, in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
* * * *
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible.
La.C.Cr.P. art. 771, in pertinent part, provides:
[T]he court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770;
* * * *
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
A mistrial is warranted under La.C.Cr.P. art. 770 when certain remarks are considered so prejudicial and potentially damaging to a defendant's rights that even a jury admonition cannot provide a cure. State v. Johnson, 94-1379, p. 16 (La.11/27/95), 664 So.2d 94, 101. Potentially damaging remarks include direct or indirect references to another crime committed or alleged to have been committed by the defendant, unless that evidence is otherwise admissible. La.C.Cr.P. art. 770(2). The comment must be within earshot of the jury and must be made by a judge, district attorney, or other court official. Id. A comment must be viewed in light of the context in which it is made and the comment must not arguably point to a prior crime and must unmistakably point to evidence of another crime. State v. Edwards, 97-1797, p. 20 (La.7/2/99), 750 So.2d 893, 906, cert. denied, 528 U.S. 1026, 120 S.Ct. 542, 145 L.Ed.2d 421 (1999). In addition, the imputation must unambiguously point to the defendant; and the defendant bears the burden of proving that a mistrial is warranted. Id. If the elements of Article 770 have not been satisfied, the decision on the motion for mistrial is governed by La.C.Cr.P. art. 771. The determination of whether a mistrial is warranted under the circumstances is within the sound discretion of the trial judge. Id. at p. 24, 750 So.2d at 908. Under Article 771, the trial court can grant a mistrial if an admonition is not sufficient to assure the defendant of a fair trial when a remark or comment made by the judge is not within the scope of Article 770. A mistrial is warranted if substantial prejudice will deprive the defendant of a fair trial. State v. Manuel, 94-0087, 94-0088, p. 4 (La.App. 4 Cir. 11/30/94), 646 So.2d 489, 491.
"Arguably, the reference to the Defendant [having an alias] may be a reference to another crime, wrong or bad act, but in order for such a reference to mandate a mistrial, there must be a distinct or recognizable reference to another crime alleged to have been committed by the defendant." State v. Chambers, 99-679 (La.App. 3 Cir. 1/19/00), 758 So.2d 231, writ denied, XXXX-XXXX (La.9/22/00), 768 So.2d 600.
*1094 Here, the trial court did not err in denying defendant's motion for mistrial pursuant to either Article 770 or Article 771. Article 466 does not prohibit the use of defendant's real name and his aliases in the bill of information. Furthermore, the reference to the aliases when the trial judge read the bill of information during voir dire did not unmistakably point to inadmissible evidence of another crime alleged to have been committed by defendant. Stating to the potential jurors that defendant had two aliases cannot be construed as an unambiguous reference to other crimes. Furthermore, the trial judge stated that in her jury instruction, she would inform the jury that the bill of information "is not evidence and means nothing."
A bill of information containing aliases of the defendant may be used in voir dire; however, as here, the trial court must instruct the jury to disregard it as evidence, to prevent any inferences from being drawn.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
In his second assignment of error, defendant complains that the State failed to present sufficient evidence of his guilt as to Count 2, the burglary of Janice Vallery's house. He argues that the evidence did not show that he had the intent to commit a felony or theft when he entered Vallery's home.
The standard for reviewing a claim of insufficient evidence is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Rosiere, 488 So.2d 965, 968 (La.1986). The reviewing court is to consider the record as a whole and not just the evidence most favorable to the prosecution and if rational triers of fact could disagree as to the interpretation of the evidence, the rational decision to convict should be upheld. State v. Mussall, 523 So.2d 1305, 1310 (La.1988). Also, the reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. Id. at 1311. The trier of fact's determination of credibility is not to be disturbed on appeal absent an abuse of discretion. State v. Cashen, 544 So.2d 1268, 1275 (La.App. 4 Cir.1989).
When circumstantial evidence forms the basis for the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact can be inferred according to reason and common sense. State v. Shapiro, 431 So.2d 372, 378 (La. 1982). Such evidence must also exclude every reasonable hypothesis of innocence. La. R.S. 15:438. The court does not determine whether another possible hypothesis suggested by the defendant could afford an exculpatory explanation of the events; rather, when evaluating the evidence in the light most favorable to the prosecution, the court determines whether possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under Jackson v. Virginia, supra. State v. Davis, 92-1623, p. 11 (La.5/23/94), 637 So.2d 1012, 1020, cert. denied, 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994). This is not a separate test from Jackson v. Virginia, but is instead an evidentiary guideline for the jury when considering circumstantial evidence and facilitates appellate review of whether a rational juror could have found the defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198, 1201 (La.1984); State v. Addison, 94-2431, p. 6 (La.App. 4 Cir. 11/30/95), 665 So.2d 1224, 1228.
Defendant was convicted of simple burglary of an inhabited dwelling which is the unauthorized entry of any inhabited dwelling, house, apartment, or other structure used in whole or in part as home or place of abode by a person having the intent to commit a felony or theft *1095 therein. La. R.S. 14:62.2. Specific criminal intent is an essential element of the crime of simple burglary of an inhabited dwelling. State v. Richardson, 547 So.2d 749, 751 (La.App. 4 Cir.1989). Specific criminal intent is that state of mind that exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow from his act or failure to act. La. R.S. 14:10(1).
The evidence presented by the State proved beyond a reasonable doubt that defendant made an unauthorized entry and that he had the requisite intent. Vallery testified that her bathroom was in disarray and her flashlight and some candy was missing. From this evidence, the State showed that defendant intended to commit a felony or theft when he entered Vallery's home. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 3
In his third assignment of error, defendant contends that the trial court erred in finding him to be a third felony offender. He argues that the State failed to present sufficient evidence of his identity because the fingerprints on the bill of information, from his conviction for first degree robbery in Orleans Parish, were not suitable for comparison. Additionally, the fingerprints on the bill of information from a Jefferson Parish conviction for simple burglary were not those of defendant.
The first issue that must be resolved is whether defendant has preserved this issue for appellate review. In State v. Cossee, 95-2218 (La.App. 4 Cir. 7/24/96), 678 So.2d 72, this court held that the failure to file a written response to the multiple bill, as required by La. R.S. 15:529.1(D)(1)(b), precluded appellate review of the defendant's claim that the documentary evidence was insufficient to support one of the prior convictions set forth in the multiple bill. The record in the present case does not contain a written response; however, defendant specifically objected at the multiple bill hearing to the lack of fingerprint evidence. An oral objection has been found sufficient to preserve such issues for appellate review. State v. Anderson, 97-2587, p. 3 (La.App. 4 Cir. 11/18/98), 728 So.2d 14, 17. Thus, defendant has preserved the issue of identity for appellate review.
La. R.S. 15:529.1(D)(1)(b) states that the district attorney has the burden of proving beyond a reasonable doubt any issue of fact and that the presumption of regularity of judgment shall be sufficient to meet the original burden of proof. The State must establish the prior felony and that the defendant is the same person convicted of that felony. State v. Neville, 96-0137, p. 7 (La.App. 4 Cir. 5/21/97), 695 So.2d 534, 538-39, writ denied 97-1637 (La.12/12/97), 704 So.2d 1180. There are various methods available to prove that the defendant is the same person convicted of the prior felony offense, such as testimony from witnesses, expert opinion as to a comparison of the defendant's fingerprints with those of the person previously convicted, photographs contained in a duly authenticated record, or evidence of an identical driver's license number, sex, race, and date of birth. State v. Henry, 96-1280, p. 7 (La.App. 4 Cir. 3/11/98), 709 So.2d 322, 326, writ denied, 99-2642 (La.3/24/00), 758 So.2d 143. The mere fact that the defendant and the person previously convicted have the same name does not constitute sufficient evidence of identity. Id.
Officer Glynn Burmaster testified that he took defendant's fingerprints on the morning of the multiple bill hearing and that those fingerprints matched those on a fingerprint card contained in S-2, a group of certified documents obtained from Jefferson Parish. The fingerprint card bore the name of Hansel Chairs, whose date of birth was August 23, 1952. Also included in S-2 was a bill of information charging Hansel Chairs and Janice Wicks with simple burglary, a signed guilty plea/waiver of rights form, and the minute entry from the guilty plea. Burmaster noted that the address of the offense in the arrest register was the same *1096 as that set forth in the bill of information. He also compared defendant's fingerprints with those on the Jefferson Parish bill of information and determined that they were not those of defendant, but were instead those of Wicks. The documents in S-3 were from a 1991 conviction for first degree robbery in Orleans Parish and included the bill of information that charged Hansel Chairs a/k/a Larry Johnson with one count of first degree robbery on October 15, 1990 and one count of armed robbery on October 19, 1990; the waiver of rights/plea of guilty form; the docket master; the minute entry for the guilty plea; and, an arrest register dated October 25, 1990, for the first degree robbery count. The arrest register had the name of Larry Johnson crossed out and had Hansel Chairs written in as the name of the arrestee. It listed Larry Johnson as an alias and stated that his date of birth was August 23, 1952. Burmaster testified that the fingerprints on the arrest register matched those of defendant but that the fingerprints on the bill of information were not suitable for identification.
The State presented sufficient evidence that defendant was the same person convicted of the two predicate offenses set forth in the multiple bill. The fingerprints on the card that matched defendant's fingerprints were part of a packet received from Jefferson Parish pertaining to the conviction for simple burglary. Although the fingerprints on the bill of information for the Orleans Parish conviction were not suitable for comparison, those prints matched those on the arrest register for the offense that formed the basis for the charge of first degree robbery to which defendant pleaded guilty. The State proved that defendant was a third felony offender. This assignment of error is without merit.

ASSIGNMENTS OF NOS. 4 & 5
In his fourth and fifth assignments of error, defendant argues that the trial court erred in imposing an excessive sentence and in denying his motion for reconsideration of sentence. He argues that the life sentence is excessive and that the trial court failed to provide any reasons for such a harsh sentence.
Defendant was sentenced to life imprisonment, without the benefit of parole, probation or suspension of sentence as a third felony habitual offender. La. R.S. 15:529.1(A)(1)(b)(ii) provides:
(ii) If the third felony or either of the two prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
Even though a sentence under the Habitual Offender Law is the minimum provided by that statute, the sentence may still be unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, or is nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime. State v. Johnson, 97-1906, pp. 7-8 (La.3/4/98), 709 So.2d 672, 676; State v. Dorthey, 623 So.2d 1276, 1280-81 (La. 1993). However, the entire Habitual Offender Law has been held constitutional, and the minimum sentences it imposes upon habitual offenders are also presumed to be constitutional. Johnson, 97-1906 at pp. 5-6, 709 So.2d at 675; see also State v. Young, 94-1636 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 527, writ denied 95-3010 (La.3/22/96), 669 So.2d 1223. The defendant bears the burden of rebutting the presumption that the minimum mandatory sentence is constitutional. State v. Short, 96-2780, p. 8 (La.App. 4 Cir. 11/18/98), 725 So.2d 23, 27, writ denied, 99-0198 (La.5/14/99), 745 So.2d 11.
Recently, the Louisiana Supreme Court in State v. Lindsey, 99-3256 (La.10/17/00), 770 So.2d 339, mandated that the guidelines *1097 set forth in State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, govern the review of mandatory minimum sentencing under an excessive sentence claim.
In Lindsey, the Court stated:
"[a] court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut [the] presumption of constitutionality" and emphasized that "departures downward from the minimum sentence under the Habitual Offender Law should occur only in rare situations."
Id. at p. 5, 770 So.2d at 343 (quoting Johnson, 709 So.2d at 676-77).
The Court further stated that in departing from the mandatory minimum sentence, the court should examine whether the defendant has clearly and convincingly shown there are exceptional circumstances to warrant the departure:
To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that:
[he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
Id., (quoting Johnson, 709 So.2d at 676) (citing State v. Young, 94-1636 at pp. 5-6 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 529).
The court should consider the defendant's record of non-violent offenses; but this alone is not sufficient to declare the sentence excessive because the Habitual Offender Law already takes violence into account. Id. The court should be mindful of the goals of the statute, and not question the wisdom of the legislature. Id. Furthermore, in making a downward departure from the mandatory minimum sentence, the court should impose the longest sentence that is not excessive under the Louisiana Constitution. Id.
Defendant's prior convictions are for burglary of an inhabited dwelling in 1988, and first degree robbery in 1991. It was the combination of the prior offenses and the present offenses of simple burglary of an inhabited dwelling that triggered the mandatory life sentence under the Habitual Offender Law.
Defendant argues that the sentence is excessive as applied to him, because the instant crimes were very minor examples of the crime of simple burglary of an inhabited dwelling. Defendant further argues that no one was injured or threatened during the commission of the instant crimes, and no property loss was sustained.
The record reveals that defendant was convicted of first-degree robbery, a crime of violence as defined by La. R.S. 14:2(13). Additionally, defendant was 46 years old at the time of sentencing.
Under the holding of Lindsey, defendant has not presented clear and convincing evidence to rebut the presumption that the mandatory life sentence he received is constitutional. Therefore, the sentence imposed by the trial court pursuant to La. R.S. 15:529.1(A)(2)(b)(ii) is not excessive, and the trial court did not err in denying the motion for reconsideration of sentence.
These assignments of error are without merit.

CONCLUSION
Accordingly, we affirm defendant convictions and sentence as to Count 1. We amend his sentence as to Count 2, to provide that the first year is to be served without benefit of parole, probation, or suspension of sentence. In all other respects, the judgment is affirmed.
CONVICTIONS AFFIRMED; SENTENCE AMENDED.